12-2037 United States v. Julio Severino-Batista and 12-2041 United States v. Eddie Alejandro-Montanez. Ms. O'Brien. Good morning, Your Honors. Good morning. May it please the Court, Leslie O'Brien for Mr. Severino-Batista. The defendant states that he should have been entitled to a judgment of acquittal in this case under Rule 29 because the government charged but failed to prove an overarching conspiracy. The defendant states that there were actually two separate conspiracies under the indictment, one occurring in the summer of 2008 and the second occurring in 2009, in the winter. In its brief on appeal, the government states two facts that I'd suggest are critical to the case. How much time between the two conspiracies? One was it's a matter of I believe four months, four month interim. But there are two facts in the prosecutor's brief that I suggest are critical facts that are wrongly stated. One is that the prosecutor states that both of these conspiracies, the 2008 and 2009, involved trying to get drugs from Columbia to Puerto Rico. Actually, the 2008 conspiracy was quite a bit more ambitious and involved trying to establish a line to Miami from Puerto Rico, bringing the drugs into Puerto Rico and then establishing a line by a cargo airline, a commercial cargo airline into Miami for the purpose of realizing greater profits. The second conspiracy, the 2009 conspiracy, was as the prosecutor states merely to bring the drugs into Puerto Rico and distribute them there. In that first conspiracy, there was extensive discussion about getting this airline, what was called a linea, underway. In both the first and second conversations, the recorded conversations that the jurors heard, there are discussions about establishing the Miami line. If we were to agree with you that there were two, not one, conspiracies, wouldn't you then just have a variance and what would be the prejudice to you of the variance? Well, Your Honor, I'd suggest that it's more than a variance. I'd suggest that, and I realize the court has handled it and has treated the cases in that way in the past, but the judge instructed the jurors in this case that unless they found that the defendants, that these three defendants were involved in an overarching conspiracy, that this was one overarching conspiracy, that they were going to have a variance. I understand it should be no different under Rule 29. But even if it's viewed as a variance, Your Honor, there was so much testimony about this initial conspiracy involving the police officer, the disgrace of a police officer, Esquilin, who bragged about killing someone and it was this Esquilin who bragged that he had the, he was the one that had the connections and could set the line to Miami and that he controlled a housing project. And all of this, much of the trial concerned that first conspiracy. So it's prejudicial, the defendants were forced to defend against that when there was no reason, and I'd suggest that the prosecution had no reason to believe that any of the defendants were involved in that. There was no evidence of any kind to connect the defendants to that first very different. What about Fora? There was Fora. There was the one individual, Fora. Isn't he the hub of the conspiracy? Well, Your Honor, that's actually the second fact in the prosecutor's brief that I take issue with because it's against the evidence. The confidential informant who was the critical witness in the case stated it was not Fora, but it was the second fact that I take issue with. It was not Fora, but Esquilin who was the boss in the first, in the first, in the 2008 conspiracy. So that's, that's incorrect. But I'd suggest, Your Honor, that even if that were correct, the court has stated that when this theory of an overarching conspiracy is based on a hub character, theorizing that Fora was the hub character, that there would have been conspirators, that the defendants in this case had knowledge of the overarching conspiracy, and there was absolutely nothing along those lines in this case. And I'll just briefly state with the few seconds left to me that it's not burden, it's not overly burdensome to expect the prosecution to charge correctly in these cases, to charge in a limited fashion, especially with types of sentences that they're seeking. Thank you, Your Honors. Thank you. May it please the Court, David Lewis, I represent Jose Alejandro Martinez. This morning I'm going to be addressing primarily the Alene issues in the case. I would point out just to the question about the gap between the two conspiracies, on page 22 of my brief, I had a little bit of a gap there. The last contact between, in the first part, was the end of August, and then it picked up again at the beginning of the following February. That said, the judge's instructions to the jury on the 23rd, I believe it's page 26, when he's instructing them on the amounts required under the 841B1, points out it was not an individualized finding of amount. It was a group, like an overarching, how much was in the conspiracy. I believe the verdict forms that were submitted to the jury that are in my separately bound record appendix also support that, that it was, if you found them guilty of this offense and then go to the amount, it was more than 5 kilograms or less, but it was never an individualized finding as to my client. I believe under the... Excuse me, I have a, let me try to read rapidly the instruction that I think is on point here. It says, for you to find each defendant guilty of a conspiracy, you must find blah, blah, blah, you have a reasonable doubt, then first that the agreement specified in the indictment and not some other agreement or agreements existed between at least two persons to import into the United States 5 kilograms or more. Why isn't that sufficient? Because the judge goes on on page 26 of his instructions and says, if you find that, that's for the conspiracy. And then when he goes to the second part of his instruction that's on the verdict form on page 26 of the instructions, he says, look, any of these three guys, if you find the overall, I can't remember, I apologize, I can't remember the exact wording, but the wording is essentially if you find that the overall amount of this is more than 5 kilograms, you find this. If you don't, it's less. It was never, they were never instructed, you know, you have to find what was reasonably foreseeable to this guy about what was going on. I just read to you, it says each defendant. Did he have to name him by name? I think there has to be, I think the way, I think to my reading of the instructions, that there was, that's not enough, that that's insufficient, that what you're talking is each, that these guys, that there's this overall arching conspiracy and it's the amount that was involved in the conspiracy and under the law at the time, that makes sense, right? Why would he instruct that individualized when that was, this is February of 2011, so he's talking about, was it Colon Solis, right? So under the terms of the law at the time, they would be looking for the judge at sentencing to make the individualized findings of drug amount and not the jury. But then after a lien, two and a half years later, that circumstance changes. And so... I have your point. I don't want to waste your time. I understand. I would direct the court's attention, it's to the Pizarro case of a couple of weeks ago, where there's a lengthy discussion, mostly the part that seems most applicable, the Section 2, I think the heading is C and D in that opinion, where it's talking about what is required post a lien in these circumstances with these types of charges. I think in this case, amount was challenged the entire time. When it was under the case law, it was appropriate to challenge it. At sentencing, there's a long discussion about what's attributable to each of these guys. They don't make those arguments at the instructions because at the time under the case law, there's no reason to, right? The judge isn't the one that's going to be making those individualized findings. Aren't we on plain error review on this issue? Was there any objection below? No. There was no need. I mean, it's sort of a situation where there's no, you know, do they have, you know, not foresight. I can't think of what the... But they had to, the plain error review suggests that they had to anticipate that a lien would come down the way it did. But don't, doesn't all our case law say if you don't ever object at all below, then to get us to flip the court below, it's plain error review. I would say that in this case, they objected to the amounts that were attributable to individual defendants when it was appropriate to do so under the case law at the time. But they were objecting just to the calculation. They weren't objecting to who was doing it. Right. I mean, they were, yeah, they were objecting to what was attributable to each guy at sentencing. And at the time, the judge was the person that was making that determination. Counsel, was it your client who is making the claim that the courtroom was closed to the family? Yes, it is. What's the basis for that? The basis for that is the discussion that I cited in my brief. In the post-trial, there was a discussion. In which the trial judge says, I know of no such practice, and it didn't happen here to the best of my knowledge. So why is the claim being made to us? The claim is being made because I felt it was sufficiently raised below. What is your evidence that warranted your making that assertion? The statements in the record by the trial counsel and the other trial counsels that that's what happened. Is there some practice that you know of? No. No further questions. Mr. Cardona. Proceed. Oh, I'm sorry. Mr. Gordon. May it please the Court, I'm Joshua Gordon. I represent Eddie Alejandro. Both Eddie and his brother, who you just heard from, were sentenced for a crime for which they were acquitted, that is carrying a firearm in a drug crime, but they were given the two-level bump, which means about five and a half years in their sentence. I want to read to you a little bit of a dissent that Scalia filed about a month ago in a certiorari case, which makes my argument much better than I do. We know about it. Okay. It violates the Fifth and Sixth Amendment, and it looks to me like there may be the possibility that this will be reversed, and perhaps this Court doesn't want to be on the wrong side of history. Explain to me the logic. If you accept the rule that a court, a judge by a preponderance, can find a fact to enhance, and if you accept that the jury was instructed on reasonable doubt, then it seems there's a gap between the two. Why can't the judge come in at 51% when the jury found 51% not enough? Although this issue of acquitted conduct hasn't been definitively ruled on, the principle, I think, in Alleyne, Apprendi, and Cunningham, is that you can't be sentenced for an element of the crime, and anything that bumps up your sentence is an element. So I think it's, although the judge found by preponderance, the preponderance standard, I think, has really gone by the wayside, although the Supreme Court hasn't said so. The Supreme Court sure has indicated so. And I don't know how you can square what the judge did here and the former state of the law with the Fifth and Sixth Amendment, as it's understood now. I believe we specifically approved of this practice in an opinion that came out about a week or ten days ago. I'm aware, Your Honor. Not all of us. No, the majority of the court. Although I believe your issue was a different one. Okay, you've preserved the issue for Supreme Court review, which I assume is why it's being argued. It is. Is there something else? There is one more thing, Your Honor. I filed a supplemental brief last week. Given the November 1st guidelines, all of the defendants here are entitled to remand for resentencing given the new guidelines and the two-level deletion that the Sentencing Commission did. I think we gave the government ten days to file a response. We'll find out if they have a response at oral argument today. Thank you, Your Honor. Mr. Cardona. Good morning. The first argument that was raised, whether a single or multiple conspiracies, Your Honor, there's some mention that this is a conspiracy to Miami and other different conspiracies. That's not the case. From the get-go, from the first day, the intentions were to open a line, a linea, to bring drugs from Colombia directly into Puerto Rico. Whether those drugs were going to be further distributed to other places is a different matter. But the three elements that we need to consider in this case, what was the purpose of this conspiracy, of this group, are present in favor of the government. At all times, at all times, it's drugs coming from Colombia, source country, into Puerto Rico. Interdependency. Police officer, Esquilin, who was going to be giving protection. Mr. Fora, the one that has the contact in Puerto Rico. In fact, he hired the other individuals, the brothers. They were going to provide vehicles. They were going to provide protection. So, the core of this group is Fora. But we cannot forget that on February 25th, there is a meeting. After the initial conversation stopped, there's a meeting in which they talk again about the same thing. Importing the drugs. Who's there? Fora, Esquilin, and Julio Severino-Batista. One of the individuals claims to be in the second conspiracy. So, Julio Severino-Batista is again on March 4th in another meeting to continue the same conversations. Importing drugs from Colombia. So, there is an indication or the suggestion that the first conspiracy stopped because there was some kind of no activity during some time. The reason of that is that August 28th, there was a meeting between the confidential source, Esquilin, and another individual. Esquilin, it's later on, on February 25th on that meeting, he's talking with the confidential source. It's recorded, it's part of the evidence that he got scared because he saw some suspicious vehicles in the area and he basically stepped back. There is no such thing as, for that reason, they stopped or they finished their conspiracy. He was just careful. And he mentioned that on February 25th. So, I believe that the evidence is strong that this is only one conspiracy. As to another issue that was brought, the instruction for the jury, well, there is a claim that there's two grounds here in which the jury was not properly instructed. We just heard that the instruction as to the individuals says each particular defendant. But also, I want to point out that the jury verdict form specifically says individual defendant. And those are ducats 283, 284, and 285. Each jury verdict form is for individual defendants, not for the group, and it specifically says whether or not you find him guilty or not, then you have to make the decision, more than five kilograms or less than five kilograms. I think that the jury was properly instructed and they all agree. How do we tell if that's saying each of them was in a conspiracy that involved more than five kilograms or each of them was, that five kilograms was individually attributed to each of them? What specific language draws that distinction that you're relying on? When we read the instruction, the first question for the jury is whether or not they find the defendant guilty or not guilty. Then it says, if you find the defendant and it only refers to one defendant because it's individual jury forms, if you find the defendant not guilty, then go to question two. But if you find the defendant guilty, continue to answer the following question. It's always a single defendant. Did you find that the amount of cocaine involved in the offense was more than five kilograms or less than five kilograms? Again, the form is going strictly to that defendant. It's not talking in general terms. So I believe that this is clear enough. The jurors accepted that each one, they have more than five kilograms and the evidence at trial was overwhelming that they in fact talked multiple times about more than five kilograms. In fact, there were seven defendants in this case. That was presented to the jury. The indictment was presented to the jury. Seven defendants, they all have their own roles. This is not an operation just to bring five kilograms or, to say even worse, less than five kilograms. The money that is involved, that is not the money that is involved. As to the two weapon enhancement, I don't think that I have to extend that much. It's certainly by preponderance of the evidence and that was a proof way beyond that standard. As to the two level reduction, Your Honor, I believe that we are going to have the opportunity to file a supplemental brief on that matter. I would like to reserve that opportunity. All right. Thank you.